**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, Administrator, | ) | |
| UNITED STATES DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

MOTION FOR STAY OF ACTION PENDING COURT ORDER

Plaintiff Novelty Inc., by counsel and pursuant to Federal Rule of Civil Procedure 62 and Local Civil Rules 7 and 65.1, hereby asks this Court to grant a stay of action to prevent the Defendants from acting on their June 22, 2007 order of suspension pending this Court's ruling on Plaintiff's application for preliminary injunction, filed June 13, 2007.

Good cause exists for grant of this motion based on the following recent actions of Defendants: (1) Defendant DEA's June 22, 2007 issuance of an order of suspension triggering a July 23 cut-off date; (2) DEA's June 25, 2007 issuance of a letter to Novelty revising DEA's position; and (3) Defendant's June 25, 2007 filing of an affidavit setting forth new facts. As discussed in the attached memorandum, those documents reveal DEA's intention to prevent a hearing on DEA's denial of a LONO necessary to import Novelty's ephedrine shipment for use in private label cough and cold products. DEA has indicated that it will preclude a hearing from being held on the denial of a LONO for Novelty's import of ephedrine if Novelty's importer, Spirit Pharmaceuticals, LLC

("Spirit"), either (1) fails to respond to DEA or to request a hearing or (2) withdraws the LONO request (contrary to Novelty's express and repeated request for an independent hearing on the merits). Unless DEA is prohibited from taking any further action on this matter by this Court pending the Court's decision on Plaintiff's motion for preliminary injunction, DEA will upset the status quo ante and deny Plaintiff the substantive benefit of this Court's judgment in the first instance. .

Novelty's request for a stay pending the Court's decision on Novelty's Motion for Preliminary Injunction satisfies this court's preliminary injunction standard. In its motion for preliminary injunction, Plaintiff has shown a likelihood of success on the merits of its Fifth Amendment Due Process claim for an administrative hearing before DEA. Denial of a stay, and of the requested preliminary injunction, will violate Novelty's Fifth Amendment right. A stay of Defendants' action on the June 22, 2007 order of suspension is necessary to preserve the *status quo ante* so that this Court may first pass upon Novelty's Fifth Amendment claim without intervening agency actions that may prejudice Plaintiff's right to a hearing. . The public interest lies in the protection of Due Process rights and in requiring an administrative agency to follow its statutory processes allowing injured parties to be heard before an administrative court. There is no harm to Defendants in permitting Novelty its administrative hearing on DEA's order of suspension and, therefore, the balance of the hardships is in Novelty's favor.

Thus, Plaintiff respectfully requests that this Court order DEA to refrain from taking any action on DEA's June 22, 2007 order of suspension (regardless of the action or inaction of Spirit) until this Court has ruled on Plaintiff's preliminary injunction

motion wherein Plaintiff asserts a Fifth Amendment right to an independent hearing on the merits of the LONO denial.

In accordance with Local Civil Rule 7(m) Plaintiff's counsel has conferred by phone and email with Defendants' counsel regarding Plaintiff counsel's intent to file this motion, the requested relief, and the basis for the motion.  Defendants' counsel stated that it was DEA's position that only Spirit could request a hearing under 21 U.S.C. § 971 and that it did not agree that the pending motion for preliminary injunction required a decision before the July 23, 2007 expiration of the 30 day period that began on June 23, 2007 with DEA's order of suspension.

A memorandum of points and authorities is attached along with a draft order.

Respectfully submitted,

NOVELTY, INC.


By:  ____/s/_____
        Its counsel
        Jonathan W. Emord (DC Bar 407414)
        Andrea G. Ferrenz (DC Bar 460512)

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
P: (202) 466-6937
F: (202) 466-6938
Email: jemord@emord.com

Date submitted:  June 29, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, Administrator, | ) | |
| UNITED STATES DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR STAY**

Plaintiff Novelty, Inc., by counsel and pursuant to Federal Rule of Civil Procedure 62 and Local Civil Rule 65.1, hereby files this memorandum of law in support of its motion requesting that this Court issue a stay of action by Defendants' on their June 22 order of suspension pending this Court ruling on Plaintiff's motion for preliminary injunction.

## I.  APPLICABLE STANDARD

Federal Rule of Civil Procedure is the most applicable rule for the power of the District Court to stay Defendants' action on their June 22, 2007 order of suspension. The stay power of the District Courts to preserve the *status quo ante* has long been recognized:

> It is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal. Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9-10 (1942).

While that exact circumstance is not at issue here, the logic applies equally.

Courts generally apply the motion for preliminary injunction four part test to motions for a stay of an enforcement: (1) likelihood of success on the merits; (2) evidence of irreparable injury to the moving party if a stay is not issued; (3) and balance of the hardships between the parties' interests; and (4) the public interest in the matter. E.g., American Cetacean Society v. Baldrige, 604 F.Supp. 1411, 1414 (D.D.C. 1985)(citing Virginia Petroleum Jobbers Association v. FPC, 259 F.2d 921, 925 (D.C.Cir. 1958)). .

## II.  APPLICABLE FACTS

Novelty filed its Motion for Preliminary Injunction on June 13, 2007.  That motion is incorporated herein by reference.  On June 22, 2007 DEA issued an order of suspension on the September 25, 2006 request for a letter of no objection ("LONO") filed by Spirit Pharmaceuticals, L.L.C. ("Spirit"), Novelty's importer.  Novelty does not yet have a copy of that order from its importer.

Pursuant to 21 C.F.R. §1313.54 a party must request a hearing within 30 days of receipt of the order of suspension.  Thirty days from reasonable overnight service of the June 22, 2007 order would be on or before Monday July 23, 2007.  Novelty is unable to confirm the date of receipt of the order by Spirit at this time.

Based on its conversations with Spirit, it is Novelty's belief that Spirit is unwilling to take any action or articulate any position that might cause it to fall into disfavor with DEA, including articulating support for Spirit's request to DEA for approval of a LONO for Novelty's ephedrine import.  **Exhibit 1** at ¶4.

On June 25, 2007 DEA sent Novelty's counsel the attached letter stating that the June 22, 2007 order of suspension had been issued.  **Exhibit 2.**  The letter also states that

2

"your client's request for an administrative hearing [made on November 2, 2006] is premature and is therefore denied at this time." Id. DEA further states that "Spirit Pharmaceuticals, LLC, may request an administrative hearing pursuant to 21 U.S.C. § 971(c)(2) and 21 C.F.R. § 1313.54(a)." The letter further predicates Novelty's right to a hearing on Spirit's pursuit of a hearing, thus negating any independent right of Novelty to a hearing contrary to 21 USC 971:

> In the event Spirit requests a hearing in a timely fashion [Novelty] will be permitted to petition the Administrative Law Judge to intervene and/or participate in such a hearing. DEA will not oppose such a motion to intervene and/or participate.

On June 25, 2007, Defendants filed a combined pleading to which they attached the affidavit of witness Darrell Meador. **Exhibit 3**. That affidavit states in pertinent part:

> 23. To the best of my knowledge and belief, as of the date and time this affidavit was signed, Spirit had not responded in writing to DEA's April 10, 2007, letter, despite numerous verbal promises to do so.
>
> * * *
>
> 25. Within 30 days after receiving the Suspension Order [of June 22, 2007], Spirit may file with the DEA a written request for a hearing in the form set forth in section 1316.47, title 21, chapter 2, CFR…Should Spirit decline to file a request for a hearing or should it file and fail to appear at the hearing, it shall be deemed to have waived the hearing and the Deputy Administrator may cancel the hearing, if scheduled…DEA may then enter a Final Order in this matter without a hearing.
> 26. Spirit may also file with the DEA a written notice that it will withdraw the import declaration that is the subject of this suspension order. If Spirit withdraws the import declaration, these proceedings will be terminated.
> 27. If Spirit elects to pursue the importation and requests a hearing, Plaintiff will have an opportunity at that point to petition the Administrative Judge for an opportunity to participate and/or intervene in the proceeding in accordance with the hearing procedures in subchapter II of chapter 5 of Title 5.

On June 28, 2007, Novelty filed its request for a hearing pursuant to 21 C.F.R. §§ 1313.54(a) and 1316.47. **Exhibit 4**.

Defendants filed their opposition to Novelty's motion for preliminary injunction June 25, 2007. Novelty's reply is due on July 19, 2007 as part of its combined pleadings.[1] The thirty day window created by the June 22, 2007 order shall expire, upon Novelty's information and belief, on Monday, July 23, 2007.

### III. ANALYSIS

A court-ordered stay preventing Defendants from taking any action on their June 22, 2007 order of suspension is necessary to preserve the status quo ante while this Court considers Novelty's motion for preliminary injunction filed on June 13, 2007. Recent statements from DEA (above) reveal an intent by that agency to close or terminate this matter on or before July 23, 2007 without regard to Novelty's pending motion for preliminary injunction before this Court.. Novelty has repeatedly made it apparent that it wishes to pursue the LONO denial of its shipment, including filing with Defendants Novelty's request for a hearing in response to the order on the suspension. Exhibit 4. Defendants appear to be attempting to alter the status quo by denying Novelty a right to a hearing before this Court has passed upon that very question in the motion now pending. Thus, Novelty respectfully request a stay of that administrative action in satisfaction of the four part test generally applicable to requests for a stay from a court seeking to preserve the *status quo ante*.

### A. NOVELTY IS LIKELY TO SUCCEED ON THE MERITS OF ITS MOTION FOR PRELIMINARY INJUNCTION

As stated in Novelty's motion for preliminary injunction, and reinforced by Defendants' statements in Exhibits 2 and 3, Defendants reveal no intent to afford Novelty the immediate hearing on the merits that is Plaintiff's due under the Fifth Amendment

---

[1] See Novelty's motion regarding the filing of that reply to be filed on Friday June 29, 2007.

4

Due Process Clause, 21 USC § 971, and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Plaintiff sought preliminary injunctive relief from this Court to obtain an administrative hearing as soon as possible. Defendants' recent statements reveal an apparent attempt to close the matter, even to "terminate" it, based on the actions of Spirit, ignoring Novelty's position in this case.

As explained in detail in Novelty's motion for preliminary injunction, deprivation of Novelty's constitutional right to a hearing constitutes irreparable harm. See e.g., Mitchum, DVA Book Mart v. Foster, 407 U.S. 225, 242 (1971)(federal injunctive relief against state court proceedings may be essential to prevent great, immediate and irreparable loss of a person's constitutional rights); American Civil Liberties Union of Florida Inc. v. Miami-Dade County School Board, 439 F.Supp.2d 1242, 1293 (S.D.Fl. 2006) (removal of books without following school board procedures violated First and Fourteenth Amendments).

Novelty is likely to succeed on the merits of its claim because 21 USC § 971, the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), and applicable precedent (e.g., PDK Labs v. Reno, 134 F.Supp.2d 24, 33 (D.D.C. 2001)) all require that Novelty be granted an independent administrative hearing to contest the LONO denial.

No other parties would be harmed by granting Novelty its statutory right to a hearing  because Novelty seeks nothing more than is required of DEA by its own enabling statute, by the APA, by the Due Process Clause of the Fifth Amendment, and by the precedent of this Court. In this motion, Novelty is not asking the Court to order allowance of the import that underlies the LONO request. Instead, Novelty asks this

Court to require Defendants to honor and observe the statutory process required by 21
USC 971.

Grant of this motion for a stay of administrative action serves the public interest
because Defendants are not above the law but must be compelled to conform their
conduct to the requirements of the DEA statute, 21 U.S.C. § 971, to the controlling
precedent of this Court, PDK Labs v. Reno, to the Administrative Procedure Act, 5
U.S.C. § 706(2)(A), and to the Due Process limits prescribed by the Fifth Amendment.

> **B.        NOVELTY WILL SUFFER IRREPARABLE HARM IF A
>             STAY IS NOT ISSUED**

Denial of this stay will permit Defendants the opportunity to alter the status quo
ante, perhaps even terminating the matter of Novelty's requested LONO for its shipment.
See Exhibit 2 and Exhibit 3 at ¶25-26.  Novelty has made it apparent that it seeks to
pursue that matter by its actions before the filing of this case, its position in this case, and
in its most recent filing with DEA.  Exhibit 4.  Spirit, Novelty's agent for the import,
apparently will not take any action that may jeopardize its relationship with DEA.
Exhibit 1 at ¶4.  DEA is ignoring Novelty's position and is focusing instead solely on
Spirit's position, regardless of the fact that Spirit is Novelty's agent for the importation.
Without a stay to preserve the status quo ante, Defendants may succeed in altering the
status of the matter in such a way as to deny Novelty the benefit of this Court's ruling on
Novelty's pending motion for preliminary injunction.   That would deprive, irrevocably,
Novelty of its due process rights.

As stated in Novelty's motion for preliminary injunction, ongoing deprivation of
Novelty's Fifth Amendment Due Process right to a hearing on the merits of the LONO
denial is itself an irreparable harm satisfying the injunction requirement.  ALCU of

Florida, 439 F.Supp.2d at 1293.  Moreover, the harm to Novelty's reputation and goodwill, its liberty interest, would be irreparable.  "One who is labeled not worthy of being trusted with common chemicals that house both legitimate and illegitimate uses is severely stigmatized."  Chemicals for Research and Industry v. Thornburgh, 762 F.Supp 1394, 1398 (N.D.Ca. 1991).  That stigma is "extreme—arguably tantamount to the stigma of being criminally prosecuted."  Id. at 1399; see also PDK Labs Inc. v. Reno, 134 F.Supp.2d at 33.

Novelty's loss of its reputation for the reliable sale of legal list 1 chemicals cannot be translated into monetary damages; its loss of market placement for its list 1 chemical products yields damages beyond those capable of reasonable estimation.  Indeed, even the directly identifiable financial losses it will suffer are ones that cannot be cured through monetary damages, because claims for monetary damages of that kind are typically barred by sovereign immunity.  28 U.S.C. § 2680.  Thus, the harms to Novelty, even without consideration of the presumed injury that arises from the Fifth Amendment violation, are not capable of being recompensed and are thus irreparable.

C.        THERE IS NO HARDSHIP TO DEFENDANTS SHOULD A
             STAY PRESERVE THE STATUS QUO ANTE

"'Mere administrative inconvenience can never justify denial' of a constitutional or civil right, the balance of hardships clearly favors plaintiffs."  Jane Does, 374 Supp.2d at 118 (citing Murphree v. Winter, 589 F.Supp. 374, 382 (S.D.Miss. 1984)).  Requiring the Defendants to stay any action on the June 22, 2007 order of suspension pending this Court's ruling  on Novelty's motion for preliminary injunction would cause little to no burden on Defendants.  The matter will be fully briefed on or before July 19, 2007, awaiting the Court's decision.  Any additional time after the July 23, 2007 deadline

imposed by the order of suspension would have no effect on Defendants' position and would merely preserve the *status quo ante*.

### D.    THE PUBLIC INTEREST IS IN THE STAY AND PROTECTION OF CONSTITUTIONAL RIGHTS

As stated in Plaintiff's motion for preliminary injunction, the public interest is best served when the agencies of the federal government abide by the requirements of their enabling statutes, the orders of this Court, and the Constitution of the United States. There is no legitimate public interest in maintaining a regime that contravenes each of those, as does the DEA's refusal to grant a hearing to a regulatee adversely affected by its denial of a LONO. There is no legitimate public interest in permitting an administrative agency to alter the status quo ante on a matter before a federal court, preventing the court from receiving the full benefit of its ruling on the constitutional claim of a private party affected by that agency. It has long been held in the public interest to protect constitutional rights. E.g. ACLU of Florida, 439 F.Supp.2d at 1294. Moreover, "the public also has an interest in requiring agencies to operate within their statutory and regulatory mandates." PDK v. Reno, 134 F.Supp.2d at 37. Thus grant of a stay to preserve the *status quo ante* serves the public interest and the absence of a stay disserves that interest.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff Novelty respectfully requests that this Court order a stay of any action by Defendants on their June 22, 2007 order of suspension until this Court rules on Novelty's pending motion for preliminary injunction.

Respectfully submitted,

NOVELTY, INC.


By:  ____/s/_____

       Its counsel
       Jonathan W. Emord (DC Bar 407414)
       Andrea G. Ferrenz (DC Bar 460512)

Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, VA 20124
P: (202) 466-6937
F: (202) 466-6938
Email: jemord@emord.com

Date submitted:  June 28, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, Administrator, | ) | |
| UNITED STATES DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

EXHIBIT 1

IN SUPPORT OF PLAINTIFF'S MOTION FOR A HEARING ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOVELTY, INC.,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 1:07-CV-00191 (RMU)
                                        )
KAREN TANDY, Administrator,             )
U.S. DRUG ENFORCEMENT                   )
ADMINISTRATION, et al.,                 )
                                        )
        Defendants.                     )

## AFFIDAVIT OF
## MARK BLEDSOE IN SUPPORT OF
## NOVELTY MOTION

I, Mark Bledsoe, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Director of Category Management for Novelty, Inc., located at 351 West Muskegon Drive, Greenfield, IN 46140 (hereinafter "Novelty").

2. I have been employed with Novelty, Inc. since February 1998. I have been the Director of Category Management for Novelty since June 2004..

3. I have spoken with Arun Heble ("Mr. Heble"), an owner of Spirit Pharmaceuticals, Inc. ("Spirit") on more than 5 occasions since May 2007 concerning the importation of ephedrine by Spirit for Novelty.

4. From my conversations with Mr. Heble, I understand that Spirit is regulated by the DEA and depends upon DEA approvals for many imports in addition to the one for which Spirit has sought a Letter of No Objection (LONO) for Novelty. I understand that Mr. Heble is unwilling to take any action or articulate any position that might cause him

to fall into disfavor with DEA, including articulating support for his request to DEA for approval of a LONO for Novelty's ephedrine import.

5. From my conversations with Mr. Heble, I understand that he does not wish Spirit to be a party to any proceedings before the DEA or in federal court involving DEA. I understand that if DEA were to change its position and allow the import of the ephedrine shipment for Novelty or if a federal court were to instruct the DEA to permit that importation, Spirit would be perfectly willing to import the ephedrine for Novelty.

_Mark B. Bledsoe_
Mark Bledsoe

_6-27-06_
Date

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NOVELTY, INC.,                                )
                                             )
      Plaintiff,                        )
                                             )
      v.                                )     Case No. 1:07-CV-00191 (RMU)
                                             )
KAREN TANDY, Administrator,                   )
UNITED STATES DRUG ENFORCEMENT )
ADMINISTRATION; et al.,                       )
                                             )
                                             )
      Defendants.                       )


## EXHIBIT 2

IN SUPPORT OF PLAINTIFF'S MOTION FOR A HEARING ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION



**U.S. Department of Justice**
**Drug Enforcement Administration**

*www.dea.gov*                    Washington, D.C. 20537

JUN 2 5 2007

Jonathan W. Emord, Esq.
Andrea G. Ferrenz, Esq.
Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, Virginia 20124

Re: Novelty, Inc.

Dear Mr. Emord and Ms. Ferrenz:

This letter is in response to your client's request for an administrative hearing to challenge the Drug Enforcement Administration's (DEA) decision to deny a Letter of No-Objection (LONO) to the competent authority in the country of export for the following proposed importation:

|                                |                            |
|--------------------------------|----------------------------|
| Registered Importer            | Spirit Pharmaceuticals, LLC |
| Date of DEA-486                | September 25, 2006         |
| Listed Chemical                | Ephedrine 2000 Kg          |
| Date of proposed importation   | October 28, 2006           |
| DEA Control #                  | 5042393                    |
| PO#                            | 22773                      |

Your client's request for an administrative hearing on this matter is premature and is therefore denied at this time. Pursuant to 21 U.S.C. § 971 (c) and 21 C.F.R. § 1313.41, DEA has suspended the importation by Order dated June 22, 2007. Spirit Pharmaceuticals, L.L.C. (Spirit) may request an administrative hearing pursuant to 21 U.S.C. § 971 (c) (2) and 21 C.F.R. § 1313.54 (a). In the event Spirit requests a hearing in a timely fashion, your client will be permitted to petition the Administrative Law Judge to intervene and/or participate in such a hearing. DEA will not oppose such a motion to intervene and/or participate.

I hope this letter has clarified DEA's position.

Sincerely,

*Lisa R Barnhill*

Lisa R. Barnhill
Acting Section Chief
Dangerous Drugs and Chemicals

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, Administrator, | ) | |
| UNITED STATES DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

EXHIBIT 3

IN SUPPORT OF PLAINTIFF'S MOTION FOR A HEARING ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-00191 |
| | ) | (RMU) |
| | ) | |
| KAREN TANDY, in her official capacity; | ) | |
| UNITED STATES DRUG | ) | |
| ENFORCEMENT ADMINISTRATION; | ) | |
| ALBERTO GONZALES, in his official | ) | |
| capacity; UNITED STATES | ) | |
| DEPARTMENT OF JUSTICE; and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DARRELL R. MEADOR

I, DARRELL R. MEADOR, pursuant to 28 U.S.C. § 1746, declare and say:

1.     I am a Staff Coordinator the Office of Enforcement Operations, Dangerous Drugs and Chemicals Section, at DEA Headquarters. My responsibilities include the prevention, detection, and investigation of the diversion of listed chemicals from legitimate channels under the Controlled Substances Act. This includes reviewing DEA Forms 486 (Import/Export Declarations) and answering questions from DEA field offices. I have served in my current capacity at DEA headquarters since July 2004, and have been a Diversion Investigator since February 1986. I was hired by DEA as a Diversion Investigator in February 1986 and attended the Basic Diversion Investigator

School at the FBI Academy in Quantico, Virginia. I have also received additional training at numerous classes administered both by the DEA and by non-DEA entities between 1989 and 2005. These courses familiarized me with matters involving chemical diversion to the illicit manufacture of methamphetamine, and the adverse environmental impact that results from this process. Prior to my current position, I was a Diversion Investigator assigned to the Nashville, Tennessee District Office. As part of my duties I conducted regulatory investigations involving manufacturers, distributors, pharmacies, practitioners, and other handlers of controlled substances. I was primarily responsible for preventing, detecting and investigating the diversion of controlled substances from legitimate channels to illicit traffic. I have conducted similar investigations related to manufacturers, distributors, importers and exporters of list I chemicals. I have also provided investigative assistance in criminal and civil actions involving the diversion of imported list I chemicals and chemicals diverted to the illicit market. The primary emphasis of most of these investigations has involved pseudoephedrine and ephedrine products. I have also worked in the regulatory process of List I chemical handlers to include pre-registrant investigations, regulatory investigations, and administrative actions taken against regulated firms.

The following information is based on my personal knowledge and/or information gained in the course of my official duties.

2.      List I chemicals are legitimate chemicals that also may be used in the illicit manufacture of a controlled substance in violation of the Controlled Substances

2

Act, 21 U.S.C. § 802 (34), 21 CFR § 1310.02(a). Ephedrine and pseudoephedrine are List I chemicals which are commonly used to illegally manufacture methamphetamine, a Schedule II controlled substance. These chemicals have been specifically designated by the Administrator of the Drug Enforcement Administration (DEA Administrator) as two of the listed chemicals subject to the provisions of 21 CFR §§ 1309 and 1313. *See* 21 CFR § 1310.02 (a).

3.      Pursuant to 21 U.S.C. § 971 (c) and 21 CFR § 1313.41 (a), the DEA Administrator has the authority to suspend any importation or exportation of ephedrine or pseudoephedrine based on evidence that the chemical proposed to be imported or exported may be diverted to the clandestine manufacture of a controlled substance.

4.      Additionally, the 1988 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("1988 U.N. Convention") requires that parties to the convention "take the measures they deem appropriate to prevent diversion of [listed substances, including ephedrine] used for the purpose of illicit manufacture of narcotic drugs to psychotropic substances, and shall co-operate with one another to this end."

5.      The 1988 U.N. Convention further states that parties "[c]ontrol all persons and enterprises engaged in the distribution of [listed chemicals], license such distributors, and "[r]equire that licensees obtain a permit for conducting [manufacture and distribution]." Art. 12, ¶ 8(b). Parties to the 1988 Convention are further obligated to

"[e]stablish and maintain a system to monitor international trade in [listed chemical] in order to facilitate the identification of suspicious transactions." *Id.* at ¶ 9(a). Parties are also obligated to notify the "competent authorities and services of the Parties concerned if there is reason to believe that the import, export or transit of a [listed chemical] is destined for the illicit manufacture of narcotic drugs or psychotropic substance." *Id.* at ¶ 9 (c). Though the 1988 U.N. Convention does not specifically mandate that parties adopt a permit system with respect to imports of listed chemicals, parties are obligated to cooperate to prevent diversion of listed chemicals used for the purpose of illicit manufacture of narcotic drugs or psychotropic substance.

6.    The United States has implemented a system by which every regulated person who imports a listed chemical is required to notify the DEA Administrator of the importation not later than 15 days before the importation is to take place. *See* 21 CFR § 1313.12 (a). Unless the notice requirement is waived, the regulated person must complete a DEA Form 486 and deliver it to DEA not later than 15 days prior to the importation. *See* 21 U.S.C. § 971 (a); 21 CFR § 1313.12 (b). The DEA Form 486 must include, among other things, name and address information about the chemical importer and/or broker, the name and description of each listed chemical, the amount of chemical to be shipped, the proposed import date, the foreign port of exportation, and the United States Customs Port of Entry. *See* 21 CFR § 1313.13 (c).

7.    In addition to the declaration system described above, the United States has negotiated bilateral agreements with several countries which are the chief sources of

bulk listed chemicals. In the early 1990's, large shipments of ephedrine and

pseudoephedrine, bound for a fictitious company in Mexico, had been seized by U.S.

Customs agents at the Dallas/Fort Worth Airport on or before 1994. The United States

subsequently learned that other large shipments of ephedrine and pseudoephedrine were

being shipped to this same fictitious company by companies located in the People's

Republic of China, India, and the Czech Republic. In an effort to control these shipments

and prevent the chemicals from being diverted for the purpose of illicit manufacture of

methamphetamine, the competent authorities in these countries developed a procedure for

authorizing the exportation of List I chemicals to and through the United States. This

became known as the "LONO" process.


       8.     Under the "LONO" process, the competent authorities of China, India, and

the Czech Republic ("exporting nations") require that, prior to permitting the export of a

List I chemical to and/or through the United States (and issuing a permit to the exporter),

the United States must first issue a "LONO," or Letter of No Objection, to the competent

authority of the exporting nation. Normally, the LONO consists of a short letter which

lists the (1) U.S. importer; (2) exporter; (3) the shipment's DEA control number; (4)

name of chemical and quantity to be shipped; and (5) the importer reference number.

The LONO further states that "the DEA has no objection to the proposed shipment at this

time." The LONO is sent to the competent authority of the exporting country and a copy

is sent to the importer. Pursuant to the terms and spirit of the 1988 U.N. Convention, the

United States is required, prior to issuing the LONO, to investigate the intended

destination and uses of List I chemicals which are imported into and through the United

States.  If, after investigating, the United States determines that the List I chemicals may

be diverted for the purpose of illicit manufacture of methamphetamine, under the terms

and spirit of the U.N. Convention, it is obligated to deny the LONO request based on the

same ground stated in 21 U.S.C. § 971 (c).  *See* 1988 U.N. Convention, Art. 12, ¶¶ 1 and

8 (b).  If the United States issues the LONO, the LONO serves to notify the exporting

country that, based on the evidence possessed by DEA at the time the LONO is issued,

that the shipment or export complies with 21 U.S.C. § 971.


9.      If, after receiving the completed DEA Form 486 and conducting its

investigation, DEA determines that the LONO will be denied, DEA will so notify the

regulated person seeking to import the listed chemical.  At this point, DEA will provide

the regulated person with the option of either withdrawing or pursuing the importation.  If

the regulated person elects to pursue the importation, DEA may suspend the importation

based on evidence that the chemical proposed to be imported may be diverted to the

clandestine manufacture of a controlled substance.  *See* 21 U.S.C. § 971 (c); 21 CFR §

1313.41 (a). However, if the regulated person withdraws the LONO request, DEA will

take no further action.  The denial of the LONO itself triggers no legal obligation except

to require the importer to contact DEA if it elects to pursue the importation.  DEA intends

to issue a suspension order whenever it is clear that the importer still seeks the

importation.


10.     Currently, there is no statutory definition of "evidence that the chemical

proposed to be imported may be diverted to the clandestine manufacture of a controlled

substance." However, through prior adjudication, DEA and the courts have approved the use of a "totality-of-the-circumstances test" to decide whether substantial evidence exists to suspend an importation of List I chemicals. *See PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 438 F.3d 1184, 1194 (D.C. Cir. 2006); *Indace, Inc., Suspension of Shipments*, 69 Fed. Reg. 67,951, 67,959 (Nov. 22, 2004).

11.    Moreover, the Attorney General considers the following factors to determine whether a regulated person, such as the Plaintiff, shall receive a registration to distribute List I chemicals. *See* 21 U.S.C. § 823 (h) which provides that the "Attorney General shall consider--

(1)    maintenance by the applicant of effective controls against diversion of listed chemicals into other than legitimate channels;

(2)    compliance by the applicant with applicable Federal, State, and local law;

(3)    any prior conviction record of the applicant under Federal or State laws relating to controlled substances or to chemicals controlled under Federal or State law;

(4)    any past experience of the applicant in the manufacture and distribution of chemicals; and

(5)    such other factors as are relevant to and consistent with the public health and safety."

12.    In considering whether "the chemical proposed to be imported may be diverted to the clandestine manufacture of a controlled substance," the Attorney General may consider the importer's "downstream" customers. This includes the person to whom

the bulk chemicals are shipped and any other persons who may receive the chemicals either in bulk or manufactured form. The type of retail establishment that will ultimately distribute the List I chemical products to member of the public is a substantial and weighty factor in determining the risk of diversion to clandestine manufacture.

13.     Numerous DEA orders have established that convenience stores and gas stations constitute the non-traditional retail or "gray market" for legitimate consumers of ephedrine products. *Wild West Wholesale*, 72 FR 4042, 4044 (2007); *Tri-County Bait Distributors*, 71 FR 52160, 52161 (2006); *D & S Sales*, 71 FR 37607, 37609 2006); *Branex, Inc.*, 69 FR 8682, 8690-92 (2004). Gray market products, which are labeled as asthma/cough/cold/allergy relief medications, are often sold or marketed for "off-label" uses, such as weight loss or staying awake and are not typically found in most supermarkets and drug stores. DEA has found that there is a substantial risk of diversion of List I chemicals into the illicit manufacture of methamphetamine when these products are sold by non-traditional retailers. *Joy's Ideas*, 70 FR 33195, 33199 (2005) (finding that risk of diversion was "real, substantial and compelling"); *Jay Enterprises*, 70 FR 24620, 24621 (2005) (noting "heightened risk of diversion" should application be granted). DEA has adjudicated numerous cases in which it has determined that gray market retailers, such as gas stations and convenience stores, are "sources for the diversion of listed chemical products." *See Joey Enterprises*, 70 FR 76866, 76867 (2005); *TNT Distributors*, 70 FR 12729, 12730 (2005); *OTC Distribution Co.*, 68 FR 70538, 70541 (2003); *MDI Pharmaceuticals*, 68 FR 4233, 4236 (2003).

14.     DEA has determined that products sold in the non-traditional market may
pass through multiple layers of distribution.  At a minimum, "gray market" products are
more likely to be "redistributed" even after they have reached the retail customer.
Accordingly, it is not a "closed system" in the manner that controlled substances are
handled.

Generally, DEA has also found that "gray-market" products are typically different
than and sometimes stronger than those found in the traditional market and "have been
disproportionately represented in clandestine lab seizures around the United States
involving listed chemical products."  DEA has also determined that many non-traditional
retailers tend to knowingly sell large quantities of List I chemical products to "smurfers,"
methamphetamine traffickers and/or individuals who work for methamphetamine
traffickers who attempt to buy out a store's entire stock of List I chemical products by
going to the store at different times or on different days.  *T. Young Associates*, 71 FR
60567, 60568 (2006); *K.V.M. Enterprises*, 67 FR 70968, 70969 (2002).


15.     Small capacity clandestine labs continue to dominate law enforcement
seizures and environmental cleanups.  Many small illicit laboratories operate with listed
chemical products often procured legally or illegally, from non-traditional retailers of
over-the-counter drug products, such as gas stations and small retail markets.  Some
retailers acquire product from multiple distributors to mask their acquisition of large
amounts of listed chemicals.  *SPA Dynamic Wholesalers*, 68 FR 61466, 61467 (2003).

16.    On September 25, 2006, DEA received two completed DEA Forms 486 from Spirit Pharmaceuticals, LLC ("Spirit"). On the forms, Spirit declared it intended to import two shipments of ephedrine hydrochloride ("ephedrine HCl"), with a net weight of 2200 kilograms. Spirit further requested that DEA issue a LONO to the competent authority of India in order to permit the import to take place and attached two purchase orders from AAA Pharmaceutical, Inc. ("AAA"), the company to whom Spirit intended to transfer the Ephedrine.

17.    After receiving the DEA Forms 486, Spirit's request for a LONO, and the AAA purchase orders, DEA determined that AAA intended to use the ephedrine HCl to manufacture "solid-dosage" or tablet form over-the-counter (OTC) pharmaceuticals ("AAA Products") for sale to the Plaintiff and one other company. DEA obtained photocopies of labels of these OTC pharmaceuticals from AAA and determined them to be "gray market" items. I then requested that AAA provide, or cause to provide, Novelty's customer list (list of retail outlets) which contain the customers to whom Novelty would be distributing the above described AAA products. Pursuant to my request to AAA, I then received from Novelty, by letter dated October 5, 2006, a list which Novelty claimed contained its "current customer list." ("current customer list"). This letter, which immediately followed my request to AAA to provide (or cause to provide) a list of Novelty's customers that would be receiving the AAA products, also referenced the same AAA Pharmaceutical Purchase Order #22773 ("AAA Purchase Order #22773") which contained the "gray-market" products described above.

After examining the current customer list provided by Novelty, DEA determined that some of Novelty's customers (i.e. gas stations and convenience stores) were venues in states where the sale of these items is prohibited by state law.  For instance, according to the "Meth-Free Tennessee Act of 2005," which took effect in April 2005, "any immediate methamphetamine precursor may be dispensed only by a licensed pharmacy." Tenn. Code Ann. § 39-17-431.  Kentucky has passed a similar measure which provides that "[a]ny nonprescription compound, mixture, or preparation contained any detectable quantity of ephedrine … [its] salts or optical isomers … shall be dispensed, sold, or distributed only by a registered pharmacist, a pharmacy intern, or a pharmacy technician." Ky. Rev. Stat. § 218A.1446.  These states exempt "gel-caps" and liquids from the type of products that must be sold only in pharmacies.  However, the products proposed to be manufactured by AAA and sold by Plaintiff are in tablet form.

18.     Therefore, based on Plaintiff's current customer list, which, on its face, indicated an apparent intention to violate state law, and Plaintiff's intention to sell to "gray market" retailers, DEA determined that authorizing the importation of ephedrine by Spirit constitutes a risk of diversion to the clandestine manufacture of a controlled substance.  For those reasons, the LONO request was denied and Spirit was so notified by letter dated October 10, 2006.  Spirit was informed that if it neglected to respond to the notification, its request would be considered withdrawn.  Spirit did not respond to DEA's notification.  Therefore, DEA considered the matter to be withdrawn.

19. In an abundance of caution, by letter dated April 10, 2007, DEA notified Spirit a second time of its right to pursue the importation and/or to affirmatively withdraw the request for a LONO. If Spirit elected to pursue the request, DEA would have ordered the suspension of the shipments pursuant to 21 U.S.C. § 971 (c) (1) and afford Spirit the opportunity for a hearing. If Spirit withdrew its importation request, DEA would have no authority to act any further on the request.

20. Before a suspension order was issued, I examined the Affidavit of Mark Bledsoe ("Bledsoe affidavit"), previously submitted in this litigation because it appeared to contain information relevant to the LONO request. In that affidavit, Mr. Bledsoe states that Novelty previously explained to DEA that its current customer list did "not identify which forms [of List I chemicals] are sold to which customers or, in the case of some chains, [did] not identify by individual stores in states where sales of convenience stores are prohibited." *See* Affidavit of Mark Bledsoe, ¶ 22. Novelty claims this occurred during a conversation with a DEA employee on February 3, 2006. However, at that time, DEA had not received the current customer list from Novelty pertaining to AAA Purchase Order #22773. Moreover, this alleged conversation would have occurred approximately eight months *before* DEA requested Novelty's current customer list and approximately seven months before Spirit submitted its LONO request. Also, when Novelty submitted its current customer list to DEA by letter dated October 5, 2006, it specifically referenced AAA Purchase Order #22773 but did not attach any explanation to place DEA on notice that some of the customers on the list allegedly *would not* be receiving the AAA products contained in that purchase order.

Despite Novelty's failure to limit its customer list to those businesses which would be receiving products manufactured pursuant to AAA Purchase Order #22773 or to inform DEA prior of its failure at the time the "current customer list" was presented to DEA, DEA considered the Bledsoe affidavit prior to drafting an Order to Suspend the Shipment of 2,000 kilograms of Ephedrine Hydrochloride by Spirit Pharmaceuticals, LLC (DEA Control No. 5042393, Purchase Order No. 22773) ("Suspension Order"). Given Mr. Bledsoe's sworn statement which promises that Novelty will comply with all applicable state laws, DEA, in drafting the Suspension Order, did not rely on previous information which tended to show Novelty intended to sell "gray market" products to stores in states where such sales are prohibited.

21. The affidavit also states that it imposes a policy on retailers which permits them to sell "no more than 2 packages per transaction and 1 transaction per day." Given that Novelty has sought to distribute packages containing 24 dosage units each, this would limit retailers to selling 48 dosage units to a single customer per day. This regime, in DEA's view, would not prevent the practice of "smurfing" as described in ¶ 14 above.

22. The Bledsoe affidavit describes in some detail Novelty's "closed" system of distribution. However, nothing in that system appears to reduce the risks described above. The decision to deny the LONO and issue the Suspension order was not based on any risk addressed by this system.

13

23.     To the best of my knowledge and belief, as of the date and time this affidavit was signed, Spirit had not responded in writing to DEA's April 10, 2007, letter, despite numerous verbal promises to do so. As a result, DEA initiated the process necessary to formally suspend the shipment. This included reviewing the information contained in the Bledsoe affidavit, considering all prior information received regarding the shipment, and drafting the Suspension Order. The Suspension Order was then placed through a "vetting" process which requires it to be reviewed by a number of DEA divisions and personnel and ultimately presented to the DEA Deputy Administrator.

24.     Accordingly, DEA suspended the shipment by Order dated June 22, 2007, for the reasons stated in the Suspension Order.

25.     Within 30 days after receiving the Suspension Order, Spirit may file with the DEA a written request for a hearing in the form set forth in Section 1316.47, Title 21, Chapter 2, CFR. (See Section 1313.54(a)). The Deputy Administrator shall then cause a hearing to be held for the purpose of receiving factual evidence regarding the issues involved in the suspension of the shipment within 45 days of the date of Spirit's request, unless Spirit requests an extension of time. (See Section 1313.52). Should Spirit decline to file a request for a hearing or should it file and fail to appear at the hearing, it shall be deemed to have waived the hearing and the Deputy Administrator may cancel the hearing, if scheduled. (See Sections 1313.54(a) and (b)) Pursuant to Title 21 CFR § 1313.57, DEA may then enter a Final Order in this matter without a hearing.

14

26.     Spirit may also file with the DEA a written notice that it will withdraw the import declaration that is the subject of this suspension order. If Spirit withdraws the import declaration, these proceedings will be terminated.

27.     If Spirit elects to pursue the importation and requests a hearing, Plaintiff will have an opportunity at that point to petition the Administrative Judge for an opportunity to participate and/or intervene in the proceeding in accordance with the hearing procedures in subchapter II of chapter 5 of Title 5.

28.     DEA is aware that, by letter dated November 2, 2006, Plaintiff previously sought to pursue Spirit's importation and has since requested a hearing on the denial of Spirit's LONO request. Unlike Spirit, Novelty is not a registered importer pursuant to 21 U.S.C. § 958 (c), and cannot import ephedrine itself. The request for a hearing was pending until a Suspension order issued because the statute only provides for a hearing on an order. By letter dated June 25, 2007, DEA denied Novelty's request for an independent hearing. Novelty is not a person to whom an order applies within the meaning of section 971(c), 21 C.F.R. §1313.41 (b), or the relevant case law.

15

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that I have read the foregoing declaration and that the same is true and correct.

Darrell R. Meador
Staff Coordinator
Office of Enforcement Operations,
Dangerous Drugs and Chemicals
Section

Executed this 25th day of June, 2007 at Arlington, Virginia.

16

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NOVELTY, INC.,                              )
                                            )
      Plaintiff,                          )
                                            )
      v.                                  )    Case No. 1:07-CV-00191 (RMU)
                                            )
KAREN TANDY, Administrator,                 )
UNITED STATES DRUG ENFORCEMENT )
ADMINISTRATION; et al.,                     )
                                            )
                                            )
      Defendants.                        )


EXHIBIT 4


IN SUPPORT OF PLAINTIFF'S MOTION FOR A HEARING ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION



Emord & Associates, P.C.

11808 WOLF RUN LANE
CLIFTON, VA 20124

2730 S. VAL VISTA DRIVE
SUITE 117
GILBERT, AZ 85295

1050 SEVENTEENTH STREET, N.W., SUITE 600
WASHINGTON, D.C. 20036
202.466.6937 • FAX 202.466.6938
www.emord.com

June 28, 2007

**VIA OVERNIGHT MAIL**
Administrator
Drug Enforcement Administration
US Department of Justice
Washington DC 20537
Attention DEA Federal Register Representative

Re:  DEA Control Number 5042393; PO #22773;

To Whom It May Concern:

Our client, Novelty Inc., hereby requests a hearing on DEA's June 22, 2007 order of suspension issued pursuant to 21 U.S.C. § 971 concerning the following matter, DEA Control Number 5042393, PO # 22773, and concerning the September 25, 2006 DEA-486 filed for importation of ephedrine (2000 kg) by Spirit Pharmaceuticals L.L.C.

Pursuant to 21 U.S.C. § 1316.47 Novelty states the following:

(A)  State with particularity the interest of the person in the proceeding:  Novelty Inc. is the company for which Spirit Pharmaceuticals Inc. sought to import the ephedrine. Novelty is "a regulated person to whom an order applies" under 21 U.S.C. § 971(c)(2). Moreover, as determined by the courts in PDK Labs Inc. v. Reno, 134 F.Supp.2d 24 (D.D.C. 2001), and PDK Laboratories Inc. v. DEA, 362 F.3d. 786 (D.C.Cir. 2004), Novelty is directly harmed, both in its property and liberty interests, by the denial of the LONO and has an independent due process right to a hearing under the Fifth Amendment of the U.S. Constitution.  Novelty's right to a hearing stands regardless of whether Spirit also requests a hearing on the order of suspension.

(B)   State with particularity the objections or issues, if any, concerning which the person desires to be heard:  Novelty desires to be heard on all issues concerning DEA's June 22, 2007 order of suspension on the September 25, 2006 request for a hearing.

(C)  State briefly the position of the person with regard to the particular objections or issues:  Novelty Inc.'s proposed importation is not at risk of diversion.  Novelty has an exemplary record of more than ten years of selling listed chemical product without receiving a warning letter that its products have been diverted.  Novelty relies upon strict security measures, including a closed system of distribution and a detailed system of monitoring inventory, to eliminate the risk of diversion.  Denial of this importation is arbitrary and capricious agency action and lacks substantial evidence in violation of the Administrative Procedure Act.

All notices to be sent pursuant to the proceeding should be addressed to:

Jonathan W. Emord
Emord & Associates P.C.
11808 Wolf Run Lane
Clifton VA 20124

Respectfully yours,

Jonathan W. Emord
Andrea G. Ferrenz

cc:     Amy Powell (via overnight mail)
        U.S. Department of Justice

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, Administrator, | ) | |
| UNITED STATES DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Plaintiff's motion for a stay of action pending this Court's order on Plaintiff's motion for preliminary injunction.  Having duly considered the motion, any opposition thereto, it is hereby:

ORDERED that, Plaintiff's motion for a stay is GRANTED and it is hereby

ORDERED that Defendants shall not take action on the June 22, 2007 order of suspension until this Court has issued its order on Plaintiff's pending motion for preliminary injunction.

SIGNED and ENTERED this ____ day of _____, 2007.


_____
U.S. DISTRICT JUDGE RICARDO M. URBINA