UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVELTY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07-CV-00191 (RMU) |
| ) | |
| KAREN TANDY, Administrator, ) | |
| UNITED STATES DRUG ) | |
| ENFORCEMENT ADMINISTRATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN REPLY
TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR LIMITED DISCOVERY OF DEFENDANT WITNESS
DARRELL R. MEADOR**

Plaintiff Novelty, Inc. ("Novelty"), by counsel and pursuant to Local Civil Rule 7, hereby submits its reply to Defendants' Opposition to Plaintiff's Motion for Limited Discovery of Defendant Witness Darrell R. Meador.

Defendants argue that Plaintiff's limited discovery and deposition request is (1) premature and (2) irrelevant to Plaintiff's claims, including to Plaintiff's pending motion for a preliminary injunction. Those charges are belied by the fact that Defendants rely on Darrell R. Meador's extra-record[1] allegations of fact, including false and perjurious

---

[1] The term "record" as used by Defendants misleads. That is because the present challenge does not arise from a hearing or rulemaking before the DEA. Rather, it arises from the absence of hearings or rulemakings in which records are created. For the particular cause of action at issue in Novelty's Motion for Preliminary Injunction the challenge arises from DEA's peculiar refusal to grant Novelty a hearing on the agency's denial of a Letter of No Objection. The grounds for the refusal of that LONO request are articulated nowhere except in the affidavits of Darrell R. Meador filed as attachments to Defendants' pleadings in this Court. Consequently, Meador has been made a witness by the Defendants' own insertion of him into this case, by their failure to rely exclusively on the documents that they claim form "the record" The Defendants would have the Court give them the inequitable benefit of limiting the case to a set of documents they have identified as the "record" when it comes to Plaintiff's pursuit of its causes of action yet not limiting the case to that set when it comes to Defendants' pursuit of its defenses, allowing instead Defendants the liberal use of extra-record affidavits from Meador without permitting Meador to be

charges of criminality, in their opposition to Plaintiff's motion for preliminary injunction and, indeed, in their opposition to Plaintiff's motion for limited discovery. Defendants rely on Meador's extra-record allegations no fewer than 85 times in the body of their opposition to plaintiff's motion for preliminary injunction (i.e., Defendants' "Motion to Dismiss, or in the Alternative, for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for a Preliminary Injunction") and, indeed, 7 more times in their opposition to Plaintiff's motion for limited discovery (while claiming to be limiting their argument to the documentary "record")..

Aside from the blatantly inconsistent and illogical argument (maintaining that argument is based solely on "the record," while basing argument upon an extra-record affidavit that they supply to the Court), Defendants' documentary "record" is incomplete. There is material upon which the agency based its decision-making that has been withheld. Certain documents supplied are incomplete or heavily redacted, leaving only conclusory statements ordering denial of the LONO without much if any factual evidence upon which the agency based its conclusion. See Docket Document 28-2 at DEA0002 and DEA0020. Thus, even were these documents the only ones upon which Meador relied (something not discernible without a deposition under oath), they are nevertheless incomplete, adding to the need for deposition and further document production.

Moreover, contradictions exist between the documents supplied and certain allegations made in the Meador Affidavit, making deposition necessary. Those contradictions include, but are not limited to, Meador's allegation that a document supplied by Novelty in the record was its current customer list, supplied in response to

---

deposed. Such a course is not only inequitable, it violates the fundamental purpose of the discovery rules. See CITATIONS.

2

Meador's request to AAA Pharmaceuticals for identification of those customers "to whom Novelty would be distributing" the products at issue (Affidavit at ¶17, Docket Doc. 30-2). The allegation is contradicted by the document itself which states that it was Novelty's current customer list in response to AAA Pharmaceuticals' request that Novelty send Mr. Meador "Novelty's customer list in regard to Schedule Listed Chemicals" with no restriction to just tablet-purchasing products. Thus, Novelty's document reveals Meador's affidavit to be a post hoc rationalization and to state an illogical assumption, contradicted by the actual facts, suggesting bias and lack of reliability.

To be sure, Meador is <u>the</u> government agent who supposedly gathered all of the alleged relevant facts and "determined," contrary to the actual facts (compare Meador Affidavit (Docket Doc. 30-2) at ¶¶ 12-18 to Bledsoe Affidavit (Docket Doc. 21-2) at ¶¶12-22 , that Novelty (1) was a downstream distributor of ephedrine (a falsehood; Novelty has a closed system of distribution direct from the point of manufacture through to the point of sale), (2) intended to sell solid dose form ephedrine OTC drugs in Kentucky and Tennessee where that is a felony (a falsehood: Novelty has never sold and has no intention of selling solid dose forms in states where those forms are illegal); (3) sold to "gray market" convenience stores at risk of diversion (a falsehood: Novelty has a closed system of distribution, strict controls on sales, and no history of diversion to the illicit drug trade); (4) sold products stronger than those found in the traditional market (a falsehood); and (5) sold to retailers who sell large quantities to "smurfers," individuals who work for meth traffickers and buy large quantities of OTC drugs (a falsehood). His actions, based on those hasty falsities, has enormous consequences: A loss of

approximately $17 million per year in Novelty revenue; the consequential unemployment of between 25 and 50 Novelty employees; and the need to change retirement and other benefits for all 500 Novelty employees. Smith Affidavit (Docket Document 21-1) at ¶¶10, 13-15.

Defendants play an all too clever game of catch-as-catch-can in this proceeding. Novelty exposed the false facts contained in the first Meador affidavit. To avoid responsibility for those falsehoods, Defendants withdrew the affidavit along with the motion to dismiss containing the first Meador affidavit and substituted for it a second, altered Meador affidavit along with a new motion to dismiss. Having relied principally on the false representation that Novelty intended to sell solid form OTC ephedrine in states where that form is illegal, Defendants now hold to view that the original assertion need not be considered because Meador and DEA, instead, now rely on other (albeit also false) grounds to justify their conclusion that Novelty presents a risk of diversion.

The foregoing facts reveal a pattern of highly irregular and irrational regulatory behavior by DEA in the treatment of Novelty, of a kind that is the epitome of abuse of discretion and arbitrary and capricious agency action. See e.g.,Motor Vehicle Manufacturers Ass'n v. State Farm, 463 U.S. 29, 42-43 (1983)(agency presented an inadequate basis and explanation); see also Woods Petroleum Corp. v. Department of Interior, 47 F.3d 1032, 1039-1041 (10th Cir. 1995)(Secretary of Interior was not evaluating the matter before him but using his power in an arbitrary way to disapprove the matter as a mere vehicle to achieve his intended result). DEA exceeded by more than seven months the 15 day statutory notice deadline for issuance of a suspension order pursuant 21 USC 971(c). On October 10, 2006, DEA issued a letter to Spirit, Novelty's

4

importer, instructing Spirit that if it did not request a hearing on the Letter of No Objection (LONO) denial, the LONO request would be considered withdrawn.  Then, on April 16, 2007, during the pendency of this proceeding, DEA took the unusual step of changing its position, sending a second letter to Spirit, this time stating that if Spirit did nothing, then a suspension order would issue.  DEA then announced that a suspension order had issued on June 22, 2007.  Having originally refused to respond to Novelty's request for an independent Section 971 hearing for over seven months, Defendants fully seven months after Novelty filed its complaint before this Court and conveniently after they changed position to cause issuance of the untimely suspension order then abruptly announced that Novelty's hearing request had been acted upon and denied, creating a feeble (indeed, a trumped up) predicate for Defendants' argument that this matter is only reviewable in the U.S. Court of Appeals.   That Defendants' new found position ignores the fact that Plaintiff's causes of action concern not a decision under the Controlled Substances Act (CSA) but, instead, under the Administrative Procedure Act (for those claims not at issue in the Motion for Preliminary Injunction) and the failure to accord Novelty its right to a hearing (the claim at issue in the Motion for Preliminary Injunction) under the Due Process Clause of the Fifth Amendment.  The law of this circuit is crystal clear that regulatees such as Novelty have an absolute right to a DEA pursuant to 21 U.S.C. § 971, and consistent with the decision in PDK Laboratories v. DEA, 362 F.3d 786, 792 (D.C.Cir. 2004)(PDK had prudential standing to access the statutory process under the CSA)--all of which are legal questions wherein this Court has previously held that it has jurisdiction (see PDK Labs v. Reno, 134 F.Supp.2d 24, 29-32 (2001); see also Novelty v. Tandy, 2006 U.S. Dist. LEXIS 57270 *26-*27,*42-*43(S.D.In. Aug. 15,

5

2006)). In short, Defendants apparently wish to employ every artifice and means they can concoct to avoid accountability for the decision to deny Novelty, the party aggrieved, the hearing it is due as a DEA regulatee and the relief it justly deserves from this Court on its claims.

Novelty's motion for preliminary injunction seeks an order from this Court compelling DEA to afford Novelty the independent hearing on the merits that this Court expects of DEA under PDK Labs, 134 F.Supp.2d at 34-38 (granting preliminary injunction requiring DEA to hold a hearing for manufacturer whose importer's request for a LONO was rejected). As the party for whom Spirit Pharmaceuticals LLC ("Spirit") seeks import of the ephedrine and as the one upon which DEA predicates its decision to deny import, Novelty is the real-party-in-interest and the regulatee aggrieved. Novelty, thus, has a constitutional and administrative right to a hearing on the merits. This Court has so held. See PDK Labs, 134 F.Supp. at 29-31; see also PDK Laboratories 362 F.3d at 791-794.

Because DEA presently depends on but one extra-record factual witness to undergird its assertion that Novelty presents a risk of diversion, i.e., Meador and no other, Novelty properly and timelys seeks to depose that witness.[2] Because DEA relies on an

---

[2] The Defendants' argument that there must be a dispute as to facts before a witness may be deposed is specious. Defendants do not identify precisely which documents Meador has reviewed or otherwise relies upon as a basis for each of his affidavit opinions that Novelty presents a risk of diversion, yet Defendants boldly make that claim as a justification for denying the LONO, which denial under PDK Labs, 134 F.Supp.2d at 29-32 and PDK Laboratories, 362 F.3d at 794, triggers Novelty's right to a hearing. Defendants make the circular argument that Meador need not be deposed because the decision to deny Novelty a hearing, which is based ultimately on the denial of the LONO, which, in turn, is based on DEA's finding of a risk of diversion, which, in turn, is Meador's opinion, is a legal decision. Yet, an ounce of inquiry yields the undeniable conclusion that the hearing denial is itself predicated on the denial of the LONO purportedly justified exclusively upon the opinion of Meador. To deny Plaintiff the right to depose Meador in this extraordinary circumstance, permits Defendants the opportunity to rely on argument untested in either the administrative context or before this Court. That result is inequitable. See Tuite v. Henry, 181 F.R.D. 175, 180 (D.D.C. 1998)(citing Bouchard v. Bandy, 1992 U.S.Dist. LEXIS 17556

affidavit from that witness no fewer than 85 times in its opposition to the motion for a preliminary injunction, the witness is central to evaluation of the bona fides of Defendants' opposition to the motion.  Because Meador alone knows precisely what alleged facts he relied upon, there is no substitute for his deposition, and Novelty understandably has a keen interest in and need for deposing him.

DEA erroneously presumes that this is an appeal based on an administrative record.  Opp. at 1.  There is no hearing, rulemaking, or proceeding of any kind before DEA from whence Novelty's challenge arises.  To the contrary, this is an original action seeking redress for the failure of DEA to follow procedures prescribed by the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment in its refusal to afford Novelty a hearing on the merits of DEA's import denial.  Therefore the "record" proffered by Defendants is in fact not an "administrative record" at all, because there has been no procedure before the DEA in which Novelty has been recognized as a party.  The "administrative record" is thus in fact a gratuitous submission of self-serving documents by Defendants except to the extent that it underlies the allegations of Meador, yet we are not informed whether the documents are all of those upon which Meador relied, we are not informed of precisely which ones he used as a basis for each factual assertion and conclusion, and we are not informed whether other documents not supplied are ones upon which he draws for his opinion.

Because Meador is the source for virtually all factual information in the opposition to the motion for preliminary injunction, the need for his deposition is immediate and paramount, is necessarily relevant and germane to that motion, and cannot

---

(E.D.Pa. Nov. 10, 1992)(need for discovery on administrative agency depends in part on whether the information sought is useful to proving the allegations at issue).

await judicial decision on the motion for summary judgment because the information acquired from that deposition will have a direct bearing on the integrity of the factual representations upon which DEA relies in its opposition to the motion for preliminary injunction.

The Defendants' argument, that the Court should refrain from acting on this matter until it has passed upon whether it has jurisdiction and whether there is final agency action, is a non sequitur and unavailing in light of PDK Labs,134 F.Supp. 2d at 34-38.  It is the Defendants, not the Plaintiff, that rely on Meador as an extra-record source for its decision to deny Novelty's ephedrine import.  Defendants have refused to rely exclusively on the "record" they submit yet would have Plaintiff's bound to that record and afforded no fair opportunity to challenge their "extra-record" reliance on Meador.  They cannot rely on the extra-record allegations of Meador in their present opposition to the motion for preliminary injunction, the only factual allegations that present support for DEA's decisions to deny the LONO and deny Novelty a right to a hearing, without affording Novelty an opportunity to examine Meador concerning the factual foundations for those extra-record allegations, particularly in light of Meador's utterly false and perjurious charge that Novelty intended to commit felonies in Kentucky and Tennessee.  Compare Meador (Docket Doc. 30-2) Affidavit at ¶¶17-18 to Bledsoe (Docket Doc. 21-2) affidavit at ¶¶12-22.

Moreover, the deposition in question is narrowly and carefully tailored to focus exclusively on ascertaining the precise factual bases for Meador's allegations in his affidavit, precisely the ones that undergird his conclusions that Novelty presented a risk of diversion.  Defendants argue myopically that risk of diversion has nothing at all to do

with Novelty's right to a hearing, the very subject of Novelty's motion for a preliminary injunction. It is, however, the Defendants that allege in their opposition to the motion for a preliminary injunction that the DEA grounded its decision to deny Novelty's importer a LONO based on a risk of diversion determination. It was that determination that led to all subsequent DEA actions. It is impossible to extricate the risk of diversion determination from the LONO denial, and it is impossible to extricate the LONO denial from all other facts causally stemming from that denial, including DEA's recent refusal to grant Novelty a hearing. But for the LONO denial, there would be no hearing issue. Furthermore, DEA repeatedly argues that its determination of a risk of diversion justifies all of its subsequent actions. Consequently, either Defendants must be forced to remove all such allegations from their opposition to the motion for preliminary injunction, including the Meador affidavit (and all 92 references therein to it!), or they must permit Meador to be deposed <u>before action on the motion for preliminary injunction</u> to identify the factual underpinnings for each of his allegations and to test the integrity of those allegations.

      Grant of a deposition before the pre-trial conference and of one involving a government agent is an extraordinary remedy, to be sure. But this case presents, without question, exceptional circumstances, circumstances that arise because an agency of the federal government, the DEA, refuses to be accountable and responsible by affording the judicial process due a regulatee aggrieved by its actions. It is indeed exceptional for the Defendants to depend so heavily on an extra-record witness in its opposition to Plaintiff's motion for preliminary injunction and its opposition to Plaintiff's motion for deposition (in over 92 total instances). It is likewise extraordinary, and reprehensible, for that

9

witness to make, at a minimum recklessly false, and possibly maliciously false, allegations that the Plaintiff intends to commit crimes in the states of Kentucky and Tennessee and to be a downstream distributor at risk of diversion to gray market retailers and "smurfers" when not one shred of evidence supports those conclusions. Moreover, the threat of a stigma created by those charges is of the very kind that this Court has held indicative of a Fifth Amendment Due Process liberty interest violation. See PDK Labs, 134 F.Supp.2d at 33.

      Accordingly, Novelty reiterates its request for the limited right of discovery requested in its original motion and respectfully asks this Court to rule upon its motion at the earliest possible moment so that the limited document production and deposition may proceed expeditiously.

      Respectfully submitted,

      NOVELTY, INC.,

      _____/s/_____
      By:   Jonathan W. Emord (DC Bar 407414)
             Andrea G. Ferrenz (DC Bar 460512)
             Attorneys for Plaintiff

Emord & Associates, P.C.
11808 Wolf Run Lane
Reston, VA 20191
Phone: (202) 466-6937
Fax: (202) 466-6938
jemord@emord.com

Date submitted:    July 6, 2007