IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NOVELTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-00191 (RMU) |
| | ) | |
| KAREN TANDY, in her official capacity; UNITED STATES DRUG ENFORCEMENT ADMINISTRATION; ALBERTO GONZALES, in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; and the UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**JOINT STATUS REPORT**

The parties hereby file this joint status report pursuant to this court's Minute order of July 13, 2007. Defendant Deputy Administrator of the United States Drug Enforcement Administration issued an Order on August 17, 2007 stating that Novelty Inc.'s (hereinafter "Novelty") request for a hearing to challenge the Order to Suspend Shipment issued to Spirit Pharmaceuticals Inc. was denied (hereinafter August 17, 2007 Order). A copy of that order and opinion is attached. Novelty, by counsel, received notice of the decision by facsimile service on August 21, 2007. This joint status report is filed within 11 days of that notice.

Pursuant to 21 U.S.C. § 877, Novelty filed its petition for review of the August 17, 2007 Order on Friday August 21, 2007 in the U.S. Court of Appeals for the District of Columbia Circuit. Filed with this status report is Novelty's voluntary dismissal without prejudice of its first cause of action in its Amended Complaint, the cause of action concerning Novelty's right to a hearing pursuant to the Due Process Clause of the Fifth Amendment and 21 U.S.C. § 971.

The parties wish to continue to stay proceedings. It is defendants' position that there is not yet a final order terminating the current stay, which calls for a "entry of a final order in the DEA administrative proceeding Docket No. 07-36." It is the defendants' position that the Deputy Administrator has not yet issued a final order on the suspension order, which will be the final order that terminates the stay.

It is plaintiff's position that the matter should be stayed pending the outcome of a motion to be filed before the Court of Appeals. On or before Friday, September 14, 2007, Novelty shall file a motion with the U.S. Court of Appeals for the D.C. Circuit seeking an order that determines whether that court or this one now has jurisdiction over the remaining three causes of action in Novelty's Amended Complaint. The parties will file a joint status report within 11 days of notice of the Court of Appeals decision on Novelty's proposed motion.

Respectfully submitted,

NOVELTY INC.

_____/s/_____
Jonathan W. Emord (DC Bar 407414)
Andrea G. Ferrenz (DC Bar 460512)
Emord & Associates, P.C.
11808 Wolf Run Lane
Reston, VA 20191
Phone: (202) 466-6937
Fax: (202) 466-6938
jemord@emord.com

Attorneys for Plaintiff


KAREN TANDY, in her official capacity;
UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION;
ALBERTO GONZALES, in his official
capacity; UNITED STATES

DEPARTMENT OF JUSTICE; and the
UNITED STATES OF AMERICA,


_____/s/_____
AMY E. POWELL
Attorney (NY Bar)
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.,
Rm 7322
Washington DC 20530
T: 202-514-9836
F: 202-616-8202
Amy.powell@usdoj.gov

Attorney for Defendant

3



**U.S. Department of Justice**
Drug Enforcement Administration

*Office of the Deputy Administrator*                                    Washington, D.C. 20537

AUG 21 2007

Jonathan W. Emord, Esq.
Emord & Associates, P.C.
11808 Wolf Run Lane
Clifton, Va. 20124

Re: Novelty, Inc.

Dear Mr. Emord:

I hereby serve you with a copy of the Deputy Administrator's final order regarding the request of your client, Novelty, Inc., for a hearing under 21 U.S.C. § 971(c)(2), to challenge the suspension order issued to Spirit Pharmaceuticals, L.L.C.

Sincerely,

James I. Crowley
Legal Advisor to the
Deputy Administrator

Enclosure

FROM :                                                                                     FAX NO. :                                                     Aug. 28 2007 09:42AM  P2
08/21/2007  21:37    2023074540                           A/AD                                                                    PAGE  03/14

BILLING CODE: 4410-09-P

# UNITED STATES DEPARTMENT OF JUSTICE
# DRUG ENFORCEMENT ADMINISTRATION

[Docket No. 07-36]

## SPIRIT PHARMACEUTICALS, L.L.C., c/o NOVELTY, INC.
## DENIAL OF REQUEST FOR HEARING

On June 22, 2007, I, the Deputy Administrator of the Drug Enforcement Administration, issued an Order to Suspend Shipment to Spirit Pharmaceuticals, L.L.C., of Fairless Hills, Pennsylvania. *See* 21 U.S.C. § 971(c). The Order suspended Spirit's proposed importation of 2,000 kilograms of Ephedrine Hydrochloride to be purchased from Emmellen Biotech Pharmaceuticals, LTD., of Mumbai, India. Order at 1.

The factual basis of the Order was that Spirit, a registered importer, had identified AAA Pharmaceuticals, Inc. (AAA), as the customer, on the Import Declaration (DEA Form 486) that it filed. *Id.* at 2. DEA personnel subsequently contacted AAA and determined that the ephedrine was to be used to manufacture tablets that would be sold to Novelty, Inc. *Id.* at 2.

The Order related that ephedrine is a list I chemical, which while having a legitimate use as a bronchodilator, is also a precursor chemical which is used in the illicit manufacture of methamphetamine, a schedule II controlled substance. *Id.* The Order also related that DEA has found that non-traditional (or gray-market) retailers, which include such entities as gas stations, convenience stores, mini-marts, and liquor stores, "purchase and sell ephedrine ... OTC products in quantities that exceed what would be necessary to meet legitimate demand" at these establishments, and that the products "are often sold to persons for use in the illicit manufacture of methamphetamine." *Id.* Finally, the Order

1

related that "AAA manufactures and Novelty distributes" ephedrine products which are "not widely-advertised and are distributed to 'non-traditional' retail outlets . . . such as convenience stores and gas stations." *Id.* at 3. Based on DEA's experience with similar ephedrine products which were distributed to non-traditional retailers, I found that "the proposed importation of ephedrine may be diverted to the clandestine manufacture of controlled substances." *Id.*

The Order notified Spirit that it could request a hearing by filing a written request within thirty days of its receipt of the Order, and that if it failed to do so, it would be deemed to have waived its right to a hearing. *Id.* Spirit did not, however, request a hearing. Nor did AAA.

Instead, on July 5, 2007, Novelty filed a request for a hearing asserting that it is "a regulated person to whom an order applies" under 21 U.S.C. § 971(c)(2). ALJ Memorandum at 1; *see also* Ltr. of Novelty's Counsel (June 28, 2007), at 1. Novelty also contended that it "is directly harmed, both in its property and liberty interests," and that it "has an independent due process right to a hearing under the Fifth Amendment . . . regardless of whether Spirit also requests a hearing on the order of suspension." Ltr. of Novelty's Counsel at 1. *Id.*

Upon receipt of Novelty's letter, the matter was assigned to Administrative Law Judge (ALJ) Gail Randall, who initiated pre-hearing procedures. Shortly thereafter, the Government filed a motion to deny Novelty a hearing on various grounds including that it is a downstream distributor and thus not entitled to a hearing under the statute. *See* Mot. to Deny Novelty, Inc. an Adjudicatory Hearing Under 21 U.S.C. § 971(c)(2) (hereinafter, Mot. to Deny).

2

Upon review of the Government's motion, the ALJ concluded "that the usual manner of handling an administrative hearing is not appropriate here." ALJ Memorandum at 2. Noting that "[t]he entity asking for a hearing, Novelty, is not the entity addressed in the Order to Suspend Shipment, Spirit Pharmaceuticals," and that the Government had objected to granting Novelty a hearing on the validity of the suspension order, the ALJ concluded that "the designation of this matter for a hearing is not clear." Id. The ALJ thus transmitted the issue to me for resolution. Id. at 2-3.

For the reasons set forth below, I conclude that Novelty is not "a regulated person to whom an order applies under [21 U.S.C. § 971(c)(1)]." 21 U.S.C. § 971(c)(2). Accordingly, I deny Novelty's request for a hearing to challenge the suspension order. I further order that the proceedings currently pending before the ALJ be terminated.

### DISCUSSION

Under 21 U.S.C. § 971(a), "[e]ach regulated person *who imports* . . . a listed chemical shall notify the Attorney General of the importation . . . not later than 15 days before the transaction is to take place." (emphasis added).[1] In addition, in subsection (c)(1), Congress granted the Attorney General the authority to "order the suspension of any importation . . . of a listed chemical . . . on the ground that the chemical may be diverted to the clandestine manufacture of a controlled substance." Id. § 971(c)(1). Subsection (c)(1) further provides that "[f]rom and after the time when the Attorney General provides written notice of the order . . . to the regulated person, the regulated person may not carry out the transaction." Id.

---

[1] In subsection(b), Congress directed that the Attorney General issue regulations "for circumstances in which the requirement of subsection(a) . . . does not apply to a transaction between a regulated person and a regular customer or to an importation by a regular importer." 21 U.S.C. § 971(b)(1).

3

In the event that the Agency orders the suspension of an importation, Congress provided that "[u]pon written request to the Attorney General, *a regulated person to whom an order applies under paragraph(1)* is entitled to an agency hearing on the record in accordance with" subchapter II of the Administrative Procedure Act. *Id.* § 971(c)(2) (emphasis added). It is this provision which is at issue in this proceeding.

Relying on *PDK Labs. v. Reno*, 134 F. Supp.2d 24 (D.D.C. 2001), Novelty contends that as a wholesale distributor, it "is a 'regulated person' within the meaning of 21 U.S.C. § 802(38) and, as such, is entitled to a hearing under" subsection (c)(2). Novelty's Resp. to Mot. to Deny at 7. Novelty also maintains that it "is a party within the 'zone of interests' designedly protected by" the hearing provision and thus entitled to a hearing on this alternative ground. *Id.* Relatedly, Novelty contends that to deny it a hearing would violate the rule of law because *PDK Labs. v. Reno* "remain[s] the law governing this agency's construction of the hearing provision," *id.* at 5, and that "DEA possesses no lawful power to act against the holding of the District Court in" that case. *Id.* at 6.

In *PDK Labs. v. Reno*, the district court addressed the question of whether a manufacturer (PDK) was entitled to a hearing to challenge this Agency's refusal to issue a Letter of No Objection (LONO) to Indace, Inc., an importer which had notified the Agency of its intent to import bulk ephedrine on behalf of PDK. 134 F.Supp. 2d at 28. When the Agency refused to grant the LONO, PDK filed suit raising various claims including that the Agency had violated the Administrative Procedure Act and had "failed to perform its statutory duties."[2] *Id.* at 27.

---

[2] At the time PDK filed suit, Indace had indicated that it planned to pursue the matter by having DEA issue a suspension order. 134 F.Supp.2d at 28. The day after PDK filed suit, Indace notified the Agency that it

4

In the course of discussing whether PDK had standing to bring its APA claims, the district court addressed the Government's arguments that PDK was "not an intended beneficiary of § 971's procedures," and that "the interests underlying [its] claims [were] not within the 'zone of interests' protected by" the statute. *Id.* at 29-30. In rejecting these arguments, the court began by noting that under 21 U.S.C. § 802(38), "'regulated persons' included manufactures [sic], distributors, importers, and exporters of listed chemicals," and that "as both a manufacturer and distributor PDK is a regulated person within the meaning of § 802." *Id.* at 30. Observing that "[s]ection 971 uses both the terms 'importers' and 'regulated persons,'" the court reasoned that "Congress easily could have limited the right to a hearing in § 971(c)(2) exclusively to 'importers to whom an order applies,' but chose not to do so–instead extending this right to 'regulated persons.'" *Id.* The court then concluded that "[t]he specific use of the term 'regulated persons' in § 971(c)(2) at least suggests that Congress intended to permit a regulated entity to whom an order applies – *including a manufacturer like PDK* – to obtain judicial review." *Id.* (emphasis added)

The court buttressed its reasoning asserting that this Agency "itself previously adopted a similar reading in *Yi Heng Enterprises Dev. Co.*, 64 FR 2234, 2235 (1999)." *Id.* While noting that "*Yi Heng* arose in a different context . . . because it involved the interests of two importers rather than an importer and a manufacture [sic]," the court noted that the "decision recognized that 'the statute provides the opportunity for a hearing to "a regulated person to whom an order (suspending shipment) applies," not necessarily the person to whom the order was issued.'" *Id.*

---

considered the matter as being "solely between" DEA and PDK and that it no longer intended to pursue the matter. *Id.* DEA then notified Indace that it considered the request for importation to have been withdrawn. *Id.*

5

After discussing the zone of interests test for review under the APA – a separate inquiry from that of who is entitled to an agency hearing under the statute – the court further concluded that "the phrase 'regulated person to whom any [sic] order applies' is evidence that a manufacturer affected by a suspension order is protected under § 971's review provision." *Id.* at 31. The court also noted that because PDK was specifically listed on the DEA Form 486 as "the intended recipient of" the proposed importation and that the suspension order "hinge[d] largely on the identity of the eventual purchaser," PDK was "entitled to a hearing." *Id.*

Most of the district court's analysis of the hearing provision occurred in the course of its discussion of whether PDK had standing under the APA. The court nonetheless clearly incorporated this reasoning in granting PDK's motions for injunctive and declaratory relief. *See id.* at 36 ("PDK is a 'regulated person to whom an order applies' within the meaning of § 971. As such, it is entitled to an expedited hearing of formal suspension orders that apply to it."). *See also id.* at 38. DEA did not appeal the court's decision, which ordered the Agency to either issue a LONO or a suspension order. *Id.* Instead, the Agency complied with the court's order by issuing orders suspending the importations. *See Indace, Inc., c/o Seegott, Inc.,* 67 FR 77805 (2002). Thereafter, PDK requested a hearing and "DEA complied with the court's ruling" by granting PDK a hearing. *Id.*

The Government disagrees with Novelty as to the precedential weight of *PDK Labs. v. Reno.* First, the Government argues that *Yi Heng*, upon which the district court relied, does not support granting Novelty a hearing because there, both entities were deemed to be importers and thus the case did not address "the question of whether

6

someone other than an importer could obtain a hearing." Motion to Deny at 9. The Government further argues that "Novelty is a step further removed from the importation than the plaintiff in *PDK Labs*," and that to grant a hearing "to any downstream regulated person affected by a suspension order is a considerable expansion of the flawed reasoning in *PDK Labs. v. Reno*." Mot. to Deny at 10. Relatedly, the Government contends that "under Novelty's reasoning, any one of [its] thousands of customers," which are also "regulated persons" under the statute, "could receive [a hearing] regardless of whether Spirit, AAA, or even Novelty was interested in pursuing the importation." *Id.* at 11.

Having considered the parties' arguments, I agree with the Government that *PDK Labs v. Reno* is not controlling authority in this matter. The statutory scheme, reasonably read, grants a hearing only to those who are properly deemed to be importers. While in some circumstances, a manufacturer may also be deemed to be an importer because it is the real party in interest in an import transaction, Novelty is neither an importer nor a manufacturer. Rather, it is the purchaser and distributor of a new and different product combining the ephedrine with guaifenesin, which has been manufactured in the United States.

To be sure, a distributor such as Novelty falls within the definition of a "regulated person." 21 U.S.C. § 802(38). In subsection(c)(2), however, Congress did not extend the hearing right to all "regulated persons." Rather, it limited the right to only "a regulated person *to whom an order applies under paragraph(1)*." *Id.* § 971(c)(2) (emphasis added). And as paragraph(1) (subsection (c)(1)) makes plain, the "regulated person to whom an order applies" is the regulated person that is seeking to "*carry out the*

7

*transaction*" of the importation and which is the same regulated person that has previously notified the Agency of the proposed transaction. *Id.* § 971(c)(1) (emphasis added). *See also id.* § 971(a) ("Each regulated person *who imports* . . . a listed chemical shall notify the Attorney General of the importation . . . not later than 15 days before *the transaction* is to take place.") (emphasis added). As section 971's text and structure demonstrate, an entity's entitlement to a hearing is not based solely on its status as a "regulated person," but rather, as a "regulated person" seeking to carry out an import transaction.

As explained above, the transaction which is the subject of the suspension order is the importation of bulk ephedrine by Spirit Pharmaceuticals from Emmellen Biotech Pharmaceuticals of Mumbai, India. Novelty is not a party to this transaction.

My predecessor's decision in *Yi Heng* (which the district court relied on in *PDK*) provides no comfort to Novelty. In *Yi Heng*, my predecessor apparently adopted the ALJ's interpretation that "the statute does not specify that only one party in a transaction is entitled to a hearing. . . . . [T]he statute provides the opportunity for a hearing to 'a regulated person to whom an order (suspending shipment) applies,' not necessarily the person to whom the order was issued." 64 FR at 2235 (int. quotations omitted).

In the decision, my predecessor relied on the Agency's regulation which defines a "chemical importer" as "a regulated person who, as *the principal party in interest in the import transaction*, has the power and responsibility for determining and controlling the bringing in or introduction of the listed chemical into the United States." *Id.* (quoting 21 CFR 1300.02(b)(8)). Because title to the chemical had passed to *Yi Heng's* customer

8

FROM :                FAX NO. :         Aug. 28 2007 09:45AM P10
08/21/...    Case 1:07-cv-00191-RMU    Document 42-2    Filed 08/31/2007    Page 10 of 13
                                                                                         PAGE 11/14

"before the chemical entered the United States," the customer was also "a regulated person to whom the suspension order applies." *Id.*

Unlike *Yi Heng*'s customer, Novelty is not "the principal party in interest in the import transaction." 21 CFR 1300.02(b)(8). Indeed, as explained above, it is not even a party to the import transaction. Novelty thus stands on a different footing than a manufacturer (such as PDK did) which lacks an import registration and which must therefore import by entering into an agency relationship with a registered importer.[3] Novelty does not have "the power and responsibility for determining and controlling the bringing in or introduction of the listed chemical into the United States." *Id.* As the Government points out, even were Novelty to prevail at a hearing, it cannot "compel Spirit to import the ephedrine." Mot. to Deny at 8. Nor does Novelty identify any consequence that would attach to it were Spirit to violate the suspension order. *See* 21 U.S.C. § 960(d).

Furthermore, here, in contrast to the *PDK* case, not even the manufacturer (AAA) filed a request for a hearing. Moreover, under Novelty's construction of the statute, any one of a manufacturer's wholesale-distributor customers (and some manufacturers have numerous wholesaler customers) would be entitled to a hearing even if the manufacturer had decided that it no longer desired to pursue the importation and manufacture the product. I will not adopt a construction of the statute that would lead to such an absurd result.[4] *Cf. Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

---

[3] As our regulation makes clear, a manufacturer is an importer only when the registered importer acts as the manufacturer's agent in importing the chemical and the manufacturer is the principal party in interest in the transaction. When an importer proposes to import a listed chemical for its own account, its future customers are not importers.

[4] Novelty also argues that importers "have little interest or incentive to do battle in a hearing with DEA," and that "the importer has no way of discerning the intricacies of its client's business." Novelty's Resp. at 8 n.3. Novelty ignores, however, that in an agency relationship, the "principal has the right to control the

9

The text and structure of section 971 thus provide ample evidence that Congress intended to grant a hearing only to those regulated persons who are principal parties to a proposed import transaction. Because Novelty is not such a party but rather the purchaser of a new and different product, which has been manufactured in the United States, it is not "a regulated person to whom an order applies." 21 U.S.C. § 971(c)(2). It is therefore not entitled to a hearing.[5]

Novelty further argues that to deny it a hearing would deprives it of liberty and property interests in violation of the Due Process Clause. Novelty's Resp. at 16-17. Relatedly, Novelty argues that under the avoidance doctrine, DEA must construe the statute to provide it with a hearing.

Novelty has not established that the suspension order has deprived it of either a liberty or property interest. Novelty maintains that it "has a liberty interest in avoiding damage to its reputation . . . that will result from the stigmatizing suspension DEA creates by its effective import ban." Novelty Resp. at 17. This contention is easily dismissed because in *Paul v. Davis*, 424 U.S. 693, 712 (1976), the Supreme Court held that one's "interest in reputation" is "neither 'liberty' nor 'property'" under the Due Process Clause.

Novelty further asserts that "the stigmatizing effects" of the suspension order will "preclude[ it] from obtaining 10 -15% of its revenue." Novelty Resp. at 17. The Suspension Order does not, however, prevent Novelty from obtaining product from any one of the numerous other manufacturers of these products and thus does not preclude

---

conduct of the agent with respect to matters entrusted to him." 1 American Law Institute, *Restatement (Second) of Agency* § 14, at 60 (1958). Presumably, the principal's right to control its agent should be sufficient to induce the agent to request a hearing, at which the manufacturer would intervene and litigate the basis for the order.

[5] For the same reasons, I also reject Novelty's contention that it is entitled to a hearing because it is within the zone of interests protected by section 971.

10

Novelty "from pursuing its core business." *PDK Labs. v. Reno*, 134 F. Supp.2d at 33. As for Novelty's claimed property interest, the *PDK* court held that "[n]othing in the overall scheme of the [Chemical Diversion and Trafficking Act] justifies the finding that [a manufacturer] has an entitlement to import List I chemicals." *Id.* at 33. The same is equally true with respect to a distributor. I therefore conclude that construing the statute to deny Novelty a hearing -- as Congress intended -- does not raise any constitutional question.[6]

---

[6] Novelty also argues that "DEA's refusal to grant [it] a hearing violates the DEA Administrator's oath of office to uphold the Constitution and the laws of the United States," Novelty Resp. at 19, and kindly reminds me that "[v]iolation of the oath is an offense punishable by judicial action." *Id.* at 20. Novelty can be assured that both I and the Administrator fully appreciate our obligation to faithfully discharge the duties of our offices.

11

## ORDER

Pursuant to the authority vested in me by 28 CFR 0.100(b) & 0.104, I hereby order that the request of Novelty, Inc., for a hearing to challenge the Order to Suspend Shipment issued to Spirit Pharmaceuticals, Inc., be, and it hereby is, denied. I further order that the proceedings in this matter be, and they hereby are, terminated. This Order is effectively immediately.

Dated: 8/17/07

Michele M. Leonhart
Deputy Administrator